USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PEDRO SOTO,                                        :
                                                   :        REPORT AND RECOMMENDATION
                                                   :
                               Plaintiff,          :        11 Civ. 2289 (PAC) (JLC)
              -v.-                                 :
                                                   :
DR. LESTER WRIGHT et al.,                          :
                                                   :
                               Defendants.         :
------------------------------------------------------------x

**To The Honorable Paul A. Crotty, United States District Judge:**

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Pedro Soto ("Soto"), an inmate in New York State custody, has brought this

action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights arising from

the alleged indifference to his serious medical needs on September 14, 2009 while he was

incarcerated at Sing Sing Correctional Facility ("Sing Sing").  Proceeding pro se, he has sued

Lester Wright, M.D. ("Dr. Wright"), retired deputy commissioner and chief medical officer of

the New York State Department of Correctional Services ("DOCS"), Elizabeth Hamawy, R.N.

("Nurse Hamawy"), and Suzette Camper, R.N. ("Nurse Camper") (collectively "Defendants"),

alleging that, in addition to the September 14, 2009 claim, Nurse Hamawy denied his request for

a medical pass in January, 2010 in retaliation for a grievance he had filed against her as a result

of the September 14, 2009 incident, that Dr. Wright did not respond personally to a letter he

wrote him in June, 2010, and that he did not see a cardiologist four times in 2010.

Defendants have moved to dismiss the complaint, in part, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, on the grounds that (1) Soto has failed to allege the

personal involvement of Dr. Wright in any constitutional violation; (2) Dr. Wright is entitled to

USDC SDNY
DATE SCANNED 1/26/12

qualified immunity; and (3) Soto has failed to allege the personal involvement of Nurse Hamawy and Nurse Camper in his claim regarding the 2010 cardiologist visits. For the reasons that follow, I recommend that the motion be granted, and the complaint dismissed in its entirety against Dr. Wright.

## I.   **Background**

   A.   Soto's Allegations

   1. The September 14, 2009 Claim

The following facts are taken from the complaint that Soto filed on March 31, 2011 ("Compl.") (Doc. No. 2), and are accepted as true for purposes of this motion. On September 14, 2009, Soto alleges that he went to "sick call," located at the Sing Sing gym, because he was experiencing "pressure in his chest." Compl. ¶¶ 1, 2. He alleges that when he saw Nurse Hamawy at that time, he complained to her about his condition but she told him he would have to wait to see the doctor "like everybody else."[1] Compl. ¶ 2. When Soto explained that, unlike other inmates, he had a pacemaker and a heart problem, he contends that she continued to put him off and he subsequently left the area without incident. Id.[2]

   Soto then went to an "emergency sick call" where he explained to Nurse Camper about his condition, but, according to Soto, she too failed to assist him, providing him only with medication for gas and refusing to arrange for him to see a doctor. Id. ¶¶ 4, 5. After both Nurses Hamawy and Camper allegedly refused to render "any meaningful medical assistance[,]" id. ¶ 6,

---

   [1] Soto refers to Nurse Hamawy as Nurse Hemingway in his Complaint (Compl. ¶ 2), but both he and counsel for Defendants refer to her as Nurse Hamawy in their motion papers.

   [2] Soto also alleges that Nurse Hamawy denied his request for a medical pass in January 2010 in retaliation for a grievance he had filed against her regarding the September 14, 2009 incident. Compl. ¶¶ 12, 13.

Soto alleges that it was not until three days later that he was able to see a doctor, who prescribed high blood pressure medication to him. Id. ¶ 7.

### 2. The Cardiologist Referral Claim

In addition to his claims about the events of September 14, 2009, Soto alleges that he filed a separate grievance on June 11, 2010 concerning the fact that his cardiologist had stated that his pacemaker should be reviewed at least four times per year and the last time he had seen a cardiologist was on January 5, 2010. Id. ¶ 16. Following the submission of the grievance, Soto claims that he received a letter advising him that he would be evaluated by a cardiologist in the near future. Id. ¶ 19.

### 3. The Claim Against Dr. Wright

Soto also alleges that on June 12, 2010, he sent a letter to Dr. Wright requesting him to "intervene in the problem he was having at Sing Sing[,]" but Dr. Wright did not respond. Id. ¶ 20. Instead, his letter to Dr. Wright was answered on August 6, 2010 by Ernest Martone, Regional Health Services Administrator, who, Soto acknowledges, was asked to respond to his letter by Dr. Wright. Id. ¶ 25. Soto alleges further that Martone's response, two months after the letter was sent, was inadequate because he failed to inform Soto when he would see a cardiologist. Id.

### B.   Procedural History

On July 14, 2011, Nurses Camper and Hamawy filed an answer to the complaint, responding to the allegations related to the September 14, 2009 claim, as well as with respect to the retaliation claim against Nurse Hamawy. Answer dated July 14, 2011, ¶ 1 (Doc. No. 12). In lieu of an answer, Dr. Wright moved to dismiss the complaint in its entirety as against him, arguing that it failed to allege his personal involvement in any constitutional violation, and that

3

even if the Court were to find sufficient allegations of personal involvement, he was entitled to

qualified immunity.  Defendants' Memorandum of Law in Support of their Motion to Dismiss

the Complaint, In Part, dated July 14, 2011 ("Def. Mem."), at 4-10 (Doc. No. 14).  In addition,

Nurses Hamawy and Camper have moved to dismiss the complaint, in part, to the extent that it

fails to allege their personal involvement with respect to his cardiologist referral claim.  Def.

Mem. at 11.  Soto filed opposition papers on August 25, 2011, Plaintiff's Memorandum of Law

in Opposition of [sic] Defendants' Rule 12(b) Motion to Dismiss ("Pl. Opp.") (Doc. No. 19), and

Defendants filed reply papers on November 10, 2011 ("Def. Reply") (Doc. No. 21).[3]

## II.  Discussion

### A.  Applicable Legal Standards

Defendants have moved to dismiss Soto's complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a 12(b)(6) motion, a court

accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences

in the plaintiff's favor.  See, e.g., Pension Comm. of Univ. of Montreal Pension Plan v. Banc of

Am. Sec. LLC, 568 F.3d 374, 381 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

---

[3]  Although it does not appear on the docket, Soto submitted a "reply" memorandum in further opposition to the motion dated November 22, 2011.  Soto may have thought he was required to file a further opposition, but he was not given permission to file what is a "sur-reply" memorandum of law, and accordingly I recommend that the Court not consider it since sur-replies are not permitted in federal court.  See, e.g., Kapiti v. Kelly, No. 07 Civ. 3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs") (citation and quotations omitted).  In any event, even if the Court were to consider the memorandum, it does not appear to present any arguments that were not previously made in Soto's earlier opposition.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citation omitted). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. Twombly, 550 U.S. at 555.

Complaints prepared by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." Peay v. Ajello, 470 F.3d 65, 67 (2d Cir. 2006) (citations and quotation marks omitted). Because Soto filed his pleadings pro se, the Court must liberally construe them and interpret his complaint "to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted). However, the Court need not accept as true "conclusions of law or unwarranted deductions of fact[.]" See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation and quotation omitted). In addition, the fact that Soto is proceeding pro se "does not exempt [him] from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation and quotation marks omitted).

When deciding a 12(b)(6) motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, the court may also rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). The court can also consider "matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted).

5

B.    Soto Has Failed to Allege the Personal Involvement of Dr. Wright in any
Constitutional Violation

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009) (citation and internal quotation marks omitted). Therefore, a complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed. See, e.g., Hemmings v. Gorczyk, 134 F.3d 104, 109 n.4 (2d Cir. 1998). Because a defendant's conduct must be a proximate cause of the alleged Section 1983 violation, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity[,]" and a showing of personal responsibility is required. Henry v. Davis, No. 10 Civ. 7575 (PAC) (JLC), 2011 WL 3295986, at *3 (S.D.N.Y. Aug. 1, 2011) (internal quotation marks and citations omitted). The Second Circuit has described five ways in which a supervisory official may be involved in actions that caused the deprivation of constitutional rights:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[4]

---

[4]    Several lower courts have considered what impact, if any, Iqbal has had on the so-called Colon factors enumerated above, see, e.g., Gonzalez v. Sarreck, No. 08 Civ. 3661 (RWS), 2011 WL 5051341, at *14 n.3 (S.D.N.Y. Oct. 24, 2011) (dismissing Dr. Wright, among others, for lack of personal involvement) (collecting cases), but the Second Circuit has not yet squarely

6

Soto has failed to allege sufficient facts to demonstrate that Dr. Wright was personally involved in any constitutional violation. Soto does not allege any direct participation by Dr. Wright in the alleged violations, that any policies he promulgated allowed the continuance of constitutional violations, nor that he was negligent in his supervision of his subordinates. The complaint alleges only that Dr. Wright's personal involvement was limited to the receipt of a single letter from Soto, which he referred to a subordinate for a response. This is insufficient to state a constitutional claim against Dr. Wright. In virtually identical circumstances, the Second Circuit recently affirmed the dismissal of a similar claim against Dr. Wright. In Goris v. Breslin, the record had shown that Dr. Wright's personal involvement "was limited to the receipt of two letters from [plaintiff], which he promptly referred to other individuals for investigation and response." 402 F. App'x 582, 584 (2d Cir. 2010) (summary order). The Circuit concluded that on that record plaintiff had "failed to establish the requisite personal involvement on Dr. Wright's part." Id. See also Melecio v. Fischer, Nos. 9:10-CV-289 (FJS/RFT), 9:10-CV-470 (FJS/RFT), 2011 WL 6987299, at *10 (N.D.N.Y. Sept. 27, 2011) (granting Rule 12(b)(6) motion and finding that "a defendant's receipt of, and responses to, letters or complaints alone is insufficient to find the requisite personal involvement") (citing Goris). In a similar case also involving Dr. Wright, the Court concluded that the delegation of a letter or complaint "to a subordinate does not establish that he was personally involved in a constitutional deprivation."

_____

addressed the issue. Because Soto has failed to meet any of the five factors here, it is not necessary for this Court to weigh in on the issue.

Gonzalez v. Sarreck, No. 08 Civ. 3661 (RWS), 2011 WL 5051341, at *15 (S.D.N.Y. Oct. 24, 2011).[5]

Furthermore, there is no allegation that Dr. Wright actually became aware of Soto's claims of deliberate indifference to his medical needs. As the district court in Goris observed, the law does not require Dr. Wright "to personally review, investigate and respond to every one of the thousands of letters dealt with by his staff." Goris v. Breslin, No. 04-CV-5666 (KAM) (LB), 2009 WL 1955607, at *7 (E.D.N.Y. July 6, 2009) (citation omitted), aff'd, 402 F. App'x 582 (2d Cir. 2010). Finally, "[b]oth the Court of Appeals and numerous district courts in this Circuit have held that receipt of letters or grievances is insufficient to impute personal involvement." Gonzalez, 2011 WL 5051341, at *14 (citing cases). For these reasons, the claim against Dr. Wright should be dismissed.

   C.   Dr. Wright is Also Entitled to Qualified Immunity

   In light of the recommendation to dismiss the complaint against Dr. Wright because he lacks personal involvement, the Court need not reach the question of qualified immunity. See, e.g., Gonzalez, 2011 WL 5051341, at *21 (immunity issues moot in light of other grounds for dismissal). Even if Dr. Wright's conduct had been properly alleged to have stated a claim for a constitutional violation, however, he would be entitled to qualified immunity. "Qualified

---

   [5] Even if Dr. Wright had ignored Soto's letter, rather than delegating it to a subordinate for a response, it appears that there would still be no liability under section 1983. See, e.g., Honig v. Bloomberg, No. 08 Civ. 0541 (DAB), 2008 WL 8181103, at *5 (S.D.N.Y. Dec. 8, 2008) ("courts have repeatedly found that 'the allegation that a supervisory official ignored a . . . letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983.") (citations omitted). "The general rule is that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violation." Id. (citation omitted).

immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would have understood that what he is doing violates that right.'" Id. at 2083 (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The inquiry turns on "the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson v. Callahan, 129 S. Ct. 808, 822 (2009) (citations and internal quotation marks omitted).

Dr. Wright is entitled to qualified immunity because no clearly established law prohibited his referral of Soto's letter to his subordinate for a response. To the contrary, if anything the law is established that nothing prohibited him from doing so. Moreover, Dr. Wright is entitled to qualified immunity on the basis that it was objectively reasonable for him to rely on the medical treatment prescribed to Soto by the doctors at Sing Sing. See, e.g. Graham v. Wright, No. 01 Civ. 9613 (NRB), 2003 WL 22126764, at * 1 (S.D.N.Y. Sept. 12, 2003) ("It is well established that supervisory officials are 'generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment.") (citation omitted).[6]

---

[6] The plaintiff in Graham also sued Dr. Wright, but because he did not allege that he had been personally treated by Dr. Wright, no claim could be sustained. Id. at *2.

D.    Soto Has Failed to Allege the Personal Involvement of Nurses Hamawy and
      Camper in the Cardiologist Referral Claim

Soto has alleged that between January and June, 2010, he did not receive the review of

his pacemaker that his cardiologist had recommended.  Instead, he contends that he was seen by

a cardiologist in January, 2010, and then not again until July, 2010.  Complaint, ¶¶ 16, 22.

Liberally construing his complaint, Soto appears to be alleging a claim of medical indifference to

his medical needs based on the failure to arrange for these cardiologist appointments.  However,

he has not alleged any personal involvement of either Nurse Hamawy or Nurse Camper related

to this claim, a prerequisite to liability as discussed above.  He does not even allege that they

knew of this supposed requirement.  Accordingly, this claim should be dismissed as well.

## III.   Conclusion

For the foregoing reasons, I recommend that the Court dismiss the complaint in its

entirety against Dr. Wright, and in part against Nurses Hamawy and Camper, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.[7]

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New

York 10007.  Any requests for an extension of time for filing objections must be directed to

---

[7] Once the motion is resolved, I will schedule a pre-trial conference with the parties to
set a discovery schedule.

Judge Crotty.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  See Thomas v. Arn, 474

U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010)  If Soto does not have access to cases cited herein

that are reported on Westlaw, he should request copies from Defendants.  See Lebron v. Sanders,

557 F.3d 76, 79 (2d Cir. 2009).

Dated:  New York, New York
        January 26, 2012

JAMES L. COTT
United States Magistrate Judge

**Copies of this Report and Recommendation have been sent by ECF to counsel of record
and by mail to:**

Pedro Soto
DIN #93-A-5674
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562