USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/1/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PEDRO SOTO,

      Plaintiff,

 -v.-

DR. LESTER WRIGHT, et al.,

      Defendants.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION

11 Civ. 2289 (PAC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul A. Crotty, United States District Judge:**

 Plaintiff Pedro Soto ("Soto"), an inmate in New York State custody, brings this action against two nurses at Sing Sing Correctional Facility, Elizabeth Hamawy, R.N. ("Hamawy") and Suzette Camper, R.N. ("Camper"), and the retired chief medical officer of the New York State Department of Correctional Services ("DOCS"), Dr. Lester Wright ("Wright"), who was previously dismissed from this case by the Court. Soto's allegations arise from a visit to "sick call" on August 14, 2009. Soto contends that Hamawy and Camper refused to treat him for a heart attack, and that Hamawy subsequently retaliated against him after he filed a grievance against her. Proceeding pro se, Soto seeks declaratory relief and damages under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments. The remaining defendants, Hamawy and Camper, now move for summary judgment. For the reasons set forth below, I recommend that the motion be granted.

USDC SDNY
DATE SCANNED 2/1/13

I.      BACKGROUND

**A.     Soto's Allegations**

Soto is an inmate at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York.  See Complaint ("Compl."), filed March 31, 2011, ¶ I.A (Dkt. No. 2).  He brings this action, alleging claims of deliberate indifference and retaliation, following final decisions by the authorities at Sing Sing that are responsible for inmate grievances: the Inmate Grievance Review Committee ("IGRC"), the Sing Sing Superintendent, and the Central Office Review Committee ("CORC").  See Motion for Summary Judgment, Declaration of Maria B. Hartofilis, Esq. ("Hartofilis Decl."), dated August 3, 2012, Ex. B (Dkt. No. 31); Motion for Summary Judgment, Declaration of Elizabeth Hamawy, R.N. ("Hamawy Decl."), dated July 28, 2012, Ex. C (Dkt. No. 31).

      1.     Claim that Hamawy and Camper Were Deliberately Indifferent to Soto's Serious Medical Needs

As an initial matter, I note that Soto has been inconsistent regarding the date of the incident giving rise to his claim of deliberate indifference.  Soto states in his complaint that Hamawy and Camper refused to treat him for a heart attack on September 14, 2009.  Compl. ¶ II.C.  However, in his opposition to the defendants' motion for summary judgment, Soto states that the incident about which he complains actually occurred on August 14, 2009.  Opposition to Summary Judgment Motion of Defendants ("Pl.'s Opp'n"), filed August 27, 2012, ¶ 2 (Dkt. No. 35).  In their reply papers, Hamawy and Camper confirm that they provided medical care to Soto on August 14, 2009, but deny seeing him on September 14, 2009.  Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Defs.' Reply"), dated October 12, 2012, at 6 (Dkt. No. 37).  Moreover, an incident date of August 14, 2009 is consistent with the grievance records from Sing Sing, which note that "the incident took place on

8/14/09 not 9/14/09 described by grievant . . ." Hartofilis Decl. Ex. B (IGRC findings dated December 17, 2009). I therefore proceed under the assumption that the incident giving rise to Soto's deliberate indifference claim occurred on August 14, 2009 rather than on the date provided in the complaint.[1]

In any event, there is no dispute that Soto has a heart condition for which he has a pacemaker, and that he visited sick call at Sing Sing on August 14, 2009 to request medical treatment. See Compl. ¶ 2; Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."), dated August 3, 2012, at 4 (Dkt. No. 32). According to Soto, he encountered Nurse Hamawy at sick call. He told Hamawy that he had been having chest pains for two days and that the pain was coming from the area of his chest where his pacemaker was located. Compl. ¶¶ 1-2. Soto asked to see a doctor immediately, but Hamawy said he would have to wait for an appointment "like everybody else." Id. ¶ 2. Soto argued that he was different from other patients because he had a serious heart condition and a pacemaker. Id. At that point, Hamawy allegedly told Soto: "I don't care about your pacemaker or the pressure you have, I want you out of my area now!" Id. Hamawy also allegedly told Soto that

---

[1] Camper and Hamawy argue that by changing the date of the alleged incident, Soto is attempting to present a new claim, which is improper at the summary judgment stage. Defs.' Reply at 3-6. However, the date change should not have come as a surprise to Camper and Hamawy because the same discrepancy regarding the date was noted and resolved during the Sing Sing grievance process. See Hartofilis Decl. Ex. B (finding by IGRC that incident occurred on August 14, 2009 and not on September 14, 2009, and statements by Camper and Hamawy regarding events of August 14, 2009). Moreover, it appears that Soto simply made a mistake regarding the date in his complaint. See Pl.'s Opp'n ¶ [3] ("As to the date of September 14, 2009, plaintiff believes such may be in error as to his interchanging September for August by mistake."). Allowing for an honest mistake in the pleadings is within the court's discretion, as "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted). As such, I accept August 14, 2009 as the correct date of the incident that Soto has called into question. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (when considering pro se complaint, court must "interpret [the] complaint to raise the strongest arguments it suggests") (citation omitted).

whenever he had chest pain, he should go to the emergency room. Id. ¶ 9.

Soto alleges that he went to "emergency sick call" a few hours later, where he met with Nurse Camper. Id. ¶¶ 3-4. Soto further alleges that Camper gave him "gas" medication for his chest pressure and stated: "Don't tell me anything about your pacemaker or your heart surgery, because I don't want to hear!" Id. ¶ 4. Soto argues that, given his medical condition, Camper should have "consult[ed] with a doctor so that [he] could be evaluated, use[d] an EKG to ascertain if their [sic] were irregularities, or admit[ted] [Soto] into the facility's hospital for observation." Id. ¶ 5.

Soto was examined by a doctor three days later, on August 17, 2009. Compl. ¶ 7; see also Hamawy Decl. Ex. B (Soto's medical records documenting treatment by Dr. David on August 17, 2009). The doctor prescribed a medication for high blood pressure. Compl. ¶ 7.

On September 24, 2009, Soto met with his cardiologist, Dr. Joseph J. Tartaglia, who examined his pacemaker. Compl. ¶ 8. Soto claims that the analysis of his pacemaker demonstrates that he experienced a minor heart attack on the day he met with Hamawy and Camper. Id. Considering Soto's allegations in the light most favorable to him, I construe Soto's complaint and his opposition papers to allege that, by refusing to take a more aggressive course of treatment for his chest pains and possible heart attack, Hamawy and Camper were deliberately indifferent to his serious medical needs.

2.      Retaliation Claim

On October 20, 2009, Soto filed a grievance through the IGRC, alleging that he was denied proper treatment for a heart attack. Compl. ¶ 9; Hartofilis Decl. Ex. B.[2] Soto contends

---

[2] The IGRC denied the grievance, finding that there was "no indication of a heart attack" at the time of the incident and that Soto was given an appointment to see a doctor shortly thereafter. Hartofilis Decl. Ex. B (IGRC findings dated December 17, 2009). Soto then appealed to the

4

that Hamawy subsequently retaliated against him for filing the grievance by refusing to renew his medical pass on January 15, 2010. Compl. ¶¶ 12-13. The medical pass would have allowed Soto to take buses from one area of the facility to another, and to shower in his housing block. Hamawy Decl. ¶ 8. After the pass was denied, Soto filed a second grievance against Hamawy on January 26, 2010. Hamawy Decl. Ex. C. A doctor renewed Soto's medical pass on January 27, 2010. See Hamawy Decl. ¶ 12 & Ex. C.[3]

## B.   Procedural History

On July 14, 2011, Hamawy and Camper filed an answer to the complaint, denying that they were indifferent to Soto's medical needs or, in Hamawy's case, retaliated against him. Answer, dated July 14, 2011, at ¶¶ 1-2 (Dkt. No. 12).[4] Following discovery, Hamawy and Camper moved for summary judgment on August 3, 2012, arguing that they were not working at Sing Sing on the original date provided by Soto—September 14, 2009—and thus could not have

---

Superintendent of Sing Sing. Id. The Superintendent agreed with the IGRC, finding that Soto did not have a heart attack and concluding that "[Soto] failed to provide any proof to substantiate any negligence on the part of medical staff." Id. (Superintendent's Response dated January 8, 2010). Soto then appealed the Superintendent's findings to the CORC. Id. The CORC similarly found that Soto's allegations "remain[ed] unsubstantiated" because "CORC ha[d] not been presented with sufficient evidence to substantiate any negligence by staff." Id. (CORC findings dated March 17, 2010).

[3] The IGRC noted that Soto's pass had been renewed, but did not address any wrongdoing by Hamawy. Hamawy Decl. Ex. C (IGRC findings dated February 18, 2010). Soto appealed to the Superintendent, who agreed with the IGRC's findings. Id. (Superintendent's Response dated March 16, 2010). Soto then appealed the Superintendent's findings to the CORC. Id. The CORC found that Hamawy acted properly and that the "appropriate performance of her duties and enforcement of the rules and regulations should not be construed as harassment by the grievant." Id. (CORC findings dated May 19, 2010).

[4] Hamawy and Camper had simultaneously moved to dismiss Soto's "referral" claim regarding his 2010 cardiologist visits for lack of personal involvement. Another named defendant, Dr. Lester Wright, the retired deputy commissioner and chief medical officer of DOCS, also moved to dismiss the claims against him. I recommended that these claims be dismissed in a Report and Recommendation dated January 26, 2012 (Dkt. No. 22), and the Court adopted the Report by Order dated February 28, 2012 (Dkt. No. 23).

been personally involved in any denial of treatment. Defs.' Mem. at 1, 3.

Soto filed an opposition on August 27, 2012, asserting that August 14, and not September 14, was likely the correct date. Pl.'s Opp'n ¶¶ 2-3. Hamawy and Camper filed reply papers on October 12, 2012. They argued that Soto should not be permitted to change the date of the challenged conduct so late in the litigation. Defs.' Reply at 1. They also contended that Soto did not have a heart attack on either August 14 or September 14, 2009, and that Defendants were still entitled to summary judgment even if August 14 was accepted as the correct date. Id. at 2-3, 6-7.

On November 27, 2012, Soto filed additional undated opposition papers and medical records. Opposition to Defendants['] Motion ("Pl.'s Further Opp'n") (Dkt. No. 40). Soto argued that he did have a heart attack on the date in question, that Defendants' witnesses were not truthful in their affidavits, and that the case should be permitted to proceed to trial. Id. ¶¶ 3-5.[5]

## II.   DISCUSSION

### A.   Standard of Review

Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment may be granted when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The materiality of a dispute "runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all

---

[5] These opposition papers are the equivalent of "sur-reply" papers, which are not permitted in federal court (as I noted in my prior Report and Recommendation after Soto filed sur-reply papers at that time). See Report and Recommendation dated January 26, 2012, at 4 n.3). Even if the Court were to consider these papers, they do not change the outcome here.

justifiable inferences are to be drawn in [that party's] favor.'" Graham, 89 F.3d at 79 (quoting Anderson, 477 U.S. at 255).

When reviewing a summary judgment motion involving a pro se party, "the submissions of [the] pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting Estelle, 429 U.S. at 106). However, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment. Tavares v. City of New York, No. 08 Civ. 3782 (PAE) (JCF), 2011 WL 5877550, at *4 (S.D.N.Y. Oct. 17, 2011) (Report & Recommendation) (citing Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)), adopted by, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011). Rule 56 requires that a party opposing the motion for summary judgment support its argument by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . ." Fed. R. Civ. P. 56(c)(1)(A). An affidavit or a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Accordingly, "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citations omitted); see also Fed. R. Civ. P. 56(e)(3). Thus, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee, 902 F. Supp. at 429 (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); Kadosh v. TRW, Inc., No. 91 Civ. 5080 (PKL), 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("[t]he work product of pro se litigants should be generously and liberally

7

construed, but [the litigant's] failure to allege either specific facts or particular laws that have been violated, renders his attempt to oppose defendants' motion ineffectual.").

**B.      Deliberate Indifference Claim**

    1.      <u>Applicable Standards</u>

42 U.S.C. § 1983 provides a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution." In a Section 1983 action claiming an Eighth Amendment violation, an inmate may allege an injury due to "deliberate indifference to a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994). In the context of medical treatment, "[i]n order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs." <u>Shenk v. Cattaraugus County</u>, 305 F. App'x. 751, 753 (2d Cir. 2009) (citations omitted). Determining deliberate indifference to a serious medical need is both an objective and subjective inquiry. <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005). The seriousness of the medical need is viewed objectively, while the official's conduct is considered subjectively. <u>Id.</u>

The objective element requires that "the prisoner was actually deprived of adequate medical care" and "the inadequacy in medical care [was] sufficiently serious." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citation and quotation marks omitted). A plaintiff need not suffer an actual injury in order to establish a serious medical need because "the Eighth Amendment protects against future harm to inmates" and thus "a remedy for unsafe conditions need not await a tragic event." <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993). Rather, a serious medical need "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" <u>Harrison v. Barkley</u>, 219 F.3d 132, 136 (2d Cir. 2000) (quoting <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d

Cir. 1998)).  This standard has also been described as requiring "'a condition of urgency, one that may produce death, degeneration or extreme pain . . . .'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).  Where, as here, the prisoner has been receiving ongoing treatment for a serious medical condition, the Court must focus on "'the particular risk of harm faced by the prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition . . .'" Goris v. Breslin, 402 F. App'x 582, 584-85 (2d Cir. 2010) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)); see also Bilal v. White, No. 10–4594–pr, 2012 WL 3734376, at *1 (2d Cir. Aug. 30, 2012).

"To satisfy the subjective element, 'the charged official must act with a sufficiently culpable state of mind.'"  Hall v. New York, 476 F. App'x 474, 477 (2d Cir. 2012) (quoting Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994)).  This "requires a state of mind that is the equivalent of criminal recklessness[.]"  Hathaway, 99 F.3d at 553 (citation omitted).  The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  In contrast, mere malpractice or negligent treatment is generally not a constitutional violation.  Estelle, 429 U.S. at 106.  Prison officials will not be liable under Section 1983 for "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless[.]"  Harrison, 219 F.3d at 139 (citing Estelle, 429 U.S. at 105-06).  Moreover, "prison officials . . . may be found free from liability if they respond[] reasonably to the risk, even if the harm ultimately [is] not averted."  Farmer, 511 U.S. at 844.  Still, "certain instances of medical malpractice may rise to the level of deliberate indifference . . . when the malpractice involves culpable recklessness[.]"

9

Hathaway, 99 F.3d at 553 (citation omitted).

       2.     <u>Hamawy and Camper Were Not Deliberately Indifferent to Soto's Medical Needs</u>

It is undisputed that Soto has a heart condition which requires ongoing monitoring and treatment. <u>See</u> Compl. ¶¶ 2, 8; Motion for Summary Judgment, Declaration of Joseph J. Tartaglia, M.D. ("Tartaglia Decl."), dated July 12, 2012, ¶ 7 (Dkt. No. 31). The factual record is inconclusive as to whether Soto had a heart attack on August 14, 2009, as he alleges, or whether, as Defendants contend, he suffered from non-cardiac chest pains.[6] However, I need not determine whether Soto had a heart attack or not because I conclude that no jury could find that Defendants were deliberately indifferent to Soto's medical needs.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." <u>Chance</u>, 143 F.3d at 703. "[D]eliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." <u>Cherry v. Edwards</u>, No. 01 Civ. 7886 (FM), 2005 WL 107095, at *8 (S.D.N.Y. Jan. 18, 2005) (citation omitted); <u>aff'd</u> 155 F. App'x 529 (2d Cir. 2005).

---

[6] To argue that he had a heart attack on August 14, 2009, Soto relies on numerical readings taken from his pacemaker, which are not intelligible to the Court without expert assistance. <u>See</u> Compl. Ex. A. Defendants dispute that Soto had a heart attack and have submitted an affidavit from Soto's treating cardiologist, Dr. Tartaglia, concluding that Soto did not suffer "any cardiac event, damage or injury to his heart or his medical condition on . . . August 14[.]" Reply Declaration of Joseph J. Tartaglia, M.D. in Further Support of Defendants' Motion for Summary Judgment ("Tartaglia Reply Decl."), dated October 12, 2012, ¶¶ 7-8 (Dkt. No. 31). In response, Soto argues that Dr. Tartaglia's affidavit is "erroneous." Pl.'s Further Opp'n ¶ 3. Soto asserts that when he spoke with Dr. Tartaglia during a recent medical visit, Dr. Tartaglia stated that "there were in fact two incidents of cardiac events . . ." <u>Id.</u> ¶ 3. Soto has also submitted additional medical charts and graphs. <u>See id.</u> (attached medical records). However, the additional charts and graphs appear to relate to a different time period. <u>See id.</u> Although the Court need not reach the issue of whether Soto had a heart attack, I note that Soto's allegation that Dr. Tartaglia has "misinformed" the Court does not create a question of material fact. <u>See, e.g.</u>, <u>Brown v. Johnson & Johnson Consumer Prods.</u>, No. 92 Civ. 7886 (KTD), 1994 WL 361444, at *4 n.3 (S.D.N.Y. July 11, 1994) ("To assert that [Defendant's] witnesses may be lying, without any evidence to contradict the witnesses' testimony cannot defeat a motion for summary judgment.") (citation omitted).

Rather, "'disagreements over medications, diagnostic techniques . . . , forms of treatment or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.'" Id. (quoting Sonds v. St Barnabus Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703 (citation omitted).

It is uncontradicted that when Soto sought treatment on August 14, 2009, Hamawy told Soto that he would have to wait his turn to see a doctor at regular sick call, but that he should go to emergency sick call if he had chest pains.  Compl. ¶¶ 2, 9; Pl.'s Opp. Ex. 1 (Hamawy's notes in Soto's medical chart that she "[i]nstructed [Soto that] when he has c.p., to go to E.R."); see also Defs.' Reply at 6.  Soto followed Hamawy's advice and saw Camper later that day.  Pl.'s Opp. Ex. 1 (Soto's medical chart showing examination and treatment by Camper).  Camper did not think Soto was having a heart attack and treated him for non-cardiac sources of chest pain, but told him to return if his symptoms did not improve.  Compl. ¶ 9.  Soto was able to see a doctor three days later on August 17, 2009.  Compl. ¶¶ 2-4, 7.  Aside from Soto's dissatisfaction with this course of treatment, there is nothing in the record to support a finding that the treatment was inadequate, much less that it demonstrated the "culpable state of mind" required for a deliberate indifference claim. See Cherry, 2005 WL 107095, at *7; see also Webb v. Jackson, No. 92 Civ. 2149 (SS), 1994 WL 86390, at *2 (S.D.N.Y. March 16, 1994) ("Medical decisions will constitute 'indifference' only when they are contrary to accepted medical standards.") (citation omitted), aff'd, 47 F.3d 1158 (2d Cir. 1995).

Moreover, I note that Soto does not claim any injury arising from the allegedly insufficient treatment.  Compl. at 10 ("injury" section of pro se complaint form left blank).  The

lack of injury alone is not dispositive of Soto's claims because, as discussed above, "the Eighth Amendment protects against future harm to inmates" as well as past or ongoing harms. Helling, 509 U.S. at 33-34. However, the lack of injury further supports Defendants' assertion that the treatment was adequate and that Soto did not have a serious medical need that went ignored. See Hall, 476 F. App'x at 477 n.1 ("'in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm.'") (quoting Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003)). Cf. Byron Lake v. Cnty of Schoharie, No. 9:01CV1284, 2004 WL 3417982, at *1, 3-4 (N.D.N.Y. Feb. 27, 2004) (inmate created triable issue of fact by producing expert testimony that prison officials failed to provide adequate care when inmate experienced difficulty breathing, chest and arm pain, and collapsed over the course of two days before ultimately suffering heart attack).

Given the evidentiary record here—which shows that Soto received adequate treatment for chest pain and that he suffered no medical consequences arising from the alleged lack of care—no rational jury could find that Camper and Hamawy were deliberately indifferent to a serious risk to Soto's health.

## C. Retaliation Claim

### 1. Applicable Standards

To make out a First Amendment retaliation claim, "a prisoner must adduce evidence of (1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." Bilal, 2012 WL 3734376 at *2 (citing Espinal v. Goord, 558 F.3d 119, 120 (2d Cir. 2009)).[7] It is undisputed that filing a grievance

---

[7] Soto does not invoke the First Amendment in his complaint. However, Defendants construed

against a prison official is protected speech that meets the first prong of this test. See Quezada v. Ercole, No. 09 Civ. 2832 (DLC), 2011 WL 3251811, at *5 (S.D.N.Y. Jul. 29, 2011) (citing Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)). To prove there is an "adverse action" for First Amendment purposes, the plaintiff must adduce evidence that the defendant's conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." Davis, 320 F.3d at 353 (citations omitted). Among other things, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal, 558 F. 3d at 129 (citing Clark Cnty Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001)).

To prove retaliation, "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's [adverse] action." Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003). "The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994)). "[A] defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." Scott, 344 F.3d at 287-88 (citation omitted). Moreover, because of "the near inevitability of decisions and actions by prison officials to which prisoners will take exception," prisoner retaliation complaints are considered "with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Flaherty v. Coughlin, 713 F. 3d 10, 13 (2d Cir. 1983)).

---

Soto's retaliation claim to have First Amendment implications, and I construe his pro se complaint to raise "the strongest arguments that [it] suggest[s]." Triestman, 470 F.3d at 474 (internal quotation marks and citation omitted).

      2.      <u>Soto's Retaliation Claim Lacks Merit</u>

There is no genuine dispute of material fact with regard to Soto's First Amendment retaliation claim. Soto alleges that Hamawy wrongfully denied him a medical pass on January 15, 2010 in retaliation for his then-pending grievance against her. Compl. ¶¶ 12-13. After the pass was denied, Soto filed a second grievance against Hamawy for retaliation. Hamawy Decl. Ex. C. (Memo from Soto to IGRC dated January 15, 2010). In the retaliation grievance, Soto asserted that Hamawy was "giving [him] a hard time" and "want[ed] [him] to see the doctor in order for [him] to have [his] medical pass renewed." <u>Id.</u> Soto's pass was renewed by a doctor on January 27, 2010. Hamawy Decl. ¶ 12 & Ex. C (IGRC findings dated February 18, 2010).

Hamawy acknowledges that she did not issue the medical pass that Soto requested, but contends that she was not authorized to issue the pass pursuant to Sing Sing policy. Hamawy Decl. ¶¶ 9, 11; Defs.' Mem at 12-13. According to Hamawy, a medical pass generally must be issued by a physician, physician's assistant, or nurse practitioner. <u>Id.</u> ¶ 9. As a registered nurse, Hamawy argues that she could only issue a medical pass in an "emergency or acute medical situation," which was not the case when Soto saw her on January 15, 2010. Hamawy Decl. ¶ 11.[8] The evidence submitted by Defendants to the Court in support of their summary judgment motion confirms that registered nurses may only issue medical passes in emergency situations, and Soto does not dispute the existence or description of this policy. Furco Decl. ¶ 8. In fact, Soto admitted in his retaliation grievance that Hamawy told him his pass would have to be

---

[8] When Soto saw Hamawy on January 15, 2010 and requested his pass, he had a temperature of 98° F and claimed to have the flu. Furco Decl. Ex. C. In his grievance alleging retaliation, Soto argued that he needed the medical pass because he was too ill to move around the prison on foot, creating a "very serious medical issue" for him. Hamawy Decl. Ex. C (Memo from Soto to the IGRC dated January 15, 2010). However, both Hamawy and Nurse Furco concluded that his condition was not so serious as to warrant an emergency pass pursuant to Sing Sing's policies. Hamawy Decl. at ¶ 11; Furco Decl. at ¶10.

renewed by a doctor.  See Hamawy Decl. Ex. C (Memo from Soto to IGRC dated January 15, 2010).

Pursuant to Sing Sing's policy on medical passes, Hamawy would not have issued the medical pass to Soto regardless of his grievance.  The policy therefore provides a proper basis for Hamawy's actions.  See Lowrance, 20 F.3d at 535 (prison officials properly punished inmate according to internal policies, when inmate had violated prison rules but had also previously filed grievances against officials); Roseboro v. Gillespie, 791 F. Supp. 2d 353, 372 (S.D.N.Y. 2011) (finding no retaliation when official denied prisoner's request to see visitor who had criminal background, and prison had policy regulating such visitors).  I therefore conclude that the evidence in the record establishes a non-retaliatory basis for Hamawy's denial of the medical pass, and accordingly recommend that summary judgment be granted on Soto's retaliation claim.[9]

### III.   CONCLUSION

For the reasons stated herein, the Court should grant summary judgment to Hamawy and Camper and dismiss the remaining claims in the complaint.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to such objections,

---

[9] While Defendants have raised qualified immunity as an alternative basis for summary judgment, in light of my conclusion that neither Hamawy nor Camper violated Soto's constitutional rights or retaliated against him, the Court need not reach the issue.  If the Court were to do so, it should conclude that Defendants are entitled to qualified immunity because Soto has not only failed to establish any constitutional deprivation, but "no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right."  Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) (quoting Williams v. Greifinger, 97 F.3d 699, 703 (2d Cir. 1996)).

shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If Plaintiff does not have access to cases cited herein that are reported on Westlaw, he should request copies from Defendants' counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
      February 1, 2013

_____
JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been sent to:**

Pedro Soto
DIN #93-A-5674
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

16